Council, please approach. All right, give us your names and let us know who you represent. Hi, I'm Carl Munt from the Office of the State Appellate Defender on behalf of Maceo Black. All right, Mr. Munt. Eve Reilly, representing the people of the state of Illinois. Okay, Ms. Reilly. Mr. Munt, before you sit down, let me just indicate to you, these other two members have not dealt with this case before, but I have dealt with it. This will be the third time. So I'm expecting you to remember my Velez and TC case and show me why this is not a precursor and, as to the manifest way, show that an opposite conclusion is possible. So that's the ball you've got to toss to get me to think differently than in Velez, TC, or my prior on this case. Other than that, you're in good shape. Yeah. I just thought I'd throw that. I mean, that's why gauntlets are there. You throw them out. So you're going to toss the ball and change my theory. May it please the council. At least on the second part. The first part that you probably, there's an open mind. You know, how you get from A to B. May it please the Court. Your Honors, this case is about whether Illinois law allows a person to be registered as a sex offender based entirely on speculation when there is no evidence to show that this offense was sexually motivated. Because this offense was not sexually motivated, we ask this court to order that Mr. Black be removed from SORA and allowed to register on VOIRA. Your Honors, the state wants you to believe that because Mr. Black was sexually motivated, he was able to register on VOIRA. So I'm asking you to remember that. If Mr. Black detained the boy for some unlawful purpose, this purpose must have been sexually motivated. However, this is simply not true. By creating VOIRA, the legislator made it very clear that some unlawful restraints are sexually motivated and some are not. As an example, holding someone for ransom would be an unlawful purpose, but that is not sexual motivation. The facts of this case simply show that the offense was not sexually motivated. Mr. Black was at the bus stop with many grocery bags and struck up a conversation with the boy about basketball. How did he get to the bus stop with all these many bags? The record is silent on that, Your Honor. He apparently walked from the grocery store with the bags. As the bus was approaching, Mr. Black asked the boy if he would help carry the groceries, and the boy agreed to help. Mr. Black did not trick him or lure him in any way. He offered the boy money for his help, and the boy agreed to help. When they got off the bus at Mr. Black's stop, they walked to his apartment, and when they got to his apartment, Mr. Black opened the door and asked the boy to place the groceries in the kitchen, which he did. As he was walking from the kitchen back to the front door, he heard Mr. Black lock the door and saw that Mr. Black was standing in front of the door. I want to stop you for just a second, Mr. Mundt, and say you say that he didn't trick or lure, but he got to the bus stop with his bags by himself, presumably. So he was a capable person, capable of carrying the bags that he had, and he gets the boy to help him bring the bags to his house as if he needed the help, and I don't know how you can say that he did. So how is that not luring him, for whatever purpose at this stage of proceedings, for whatever purpose, how is that not luring or deceiving or tricking him by some pretextual means? He didn't lure him, Your Honor, because he did actually have a large number of grocery bags, as Judge Sachs found at the trial. Judge Sachs specifically said, this is not one of those cases where he said, you know, I'll give you candy or something, come to my house. He did actually have grocery bags. No, it was more clever than that, it seems. Because he did ask the boy for some help, and the boy was genuine in saying, I will help you, I don't even want the money. But then when the boy tried to get off the bus, the defendant did grab his leg and tell him to sit down, didn't he? He simply reminded him that he had agreed to help and that Mr. Black's stop was a couple down the road. He simply reminded him, he touched him, didn't he? He touched his arm. And pulled him down. Asked him to speak. The record does indicate that he touched his elbow. It's not clear that he pulled him or tugged him. But, Your Honor, the boy had agreed to help at this point, so Mr. Black was simply assuming that the boy wanted to help. And when they were walking to the apartment, the boy was not being forced or held or coerced. He willingly helped Mr. Black with the groceries to his apartment. Now, as he was trying to leave, Mr. Black again offered to pay him money for his help, and the boy refused. And at this point, the boy said, I need to leave, and shoved Mr. Black away from the door, unlocked the door, and left. Mr. Black did not try to stop him, he didn't grab him, he didn't say anything. The restraint lasted mere seconds, Your Honors, and nothing of these facts showed that it was sexually motivated. Importantly, Your Honors, no one ever argued that this case was sexually motivated at the trial. The State had the opportunity to prove motive. They charged Mr. Black with aggravated kidnapping as well as unlawful restraint. One of the elements of unlawful aggravated kidnapping is the intent to secretly confine. And so the State was trying to prove Mr. Black's intent in why he took this boy back to the apartment. The judge, however, found him not guilty because he apparently believed those elements had not been met. The State did not argue this case was sexually motivated until after Mr. Black had been placed on SORA and re-challenged that, Your Honors. The definition of sexually motivated is a narrow definition and shows the legislature's intent to keep it narrow. The definition says one or more facts of the underlying offense shows an intent to engage in behavior of a sexual nature. The legislature specifically made this narrow. They could have used broader language such as all of the evidence or any of the information that came out at sentencing, but they chose to say facts of the underlying offense. The fact that they said offense and not offender is a clear indication that they wanted to focus on the facts about the offense and not merely everything about the offender in general. And that position is supported by this Court's decision in People v. Velez at paragraph 73 to 74 where they said that a judge should only look at the facts of the offense itself. So if by logical extension then you're saying that if a defendant in a case like this did the same thing, didn't say anything, didn't touch the kid, didn't say I want to do this to you or you do this to me, but he was a prior sex offender against children, that wouldn't be relevant? It could possibly be relevant if there was some connection to the offense, Your Honor. But no, let's say that there's nothing that the previously convicted child abuser said or did in this particular instance, lured the child back to his apartment but didn't touch the child, didn't indicate things verbally that I want to do to you or you to do to me. But if it was also true that he was earlier a convicted child abuser, you're saying that that wouldn't be relevant for the Court to determine whether or not this conduct was sexually motivated? That's correct, Your Honor. Absent some kind of connection to the offense, the legislature specifically says we must look at the facts of the underlying offense, which is... So where do you draw the line between a precursor act and what is in evidence here, which I somewhat agree with you that merely because he had a pornographic magazine to me doesn't get you there. But I'm saying where is the line? Well, Your Honor, as you mentioned, the precursor cases, the ones the State cited, Banks, Skiles, and Lamke, all three of those cases, the defendant was convicted of aggravated kidnapping. And in those cases, the facts showed that the defendants grabbed the victims and dragged them into an alley in two cases and one into a building. And in those cases, they physically grabbed the child and moved them to a different location. That's significantly more danger to the child than in this case where he agreed to help Mr. Black. How do you overcome our Velez case, which was just released not that long ago, this very panel? Sure. Your Honor, in Velez, that defendant was in his work van, and he saw a middle school girl walking home from school with her backpack, and he said, hey, baby girl, do you want a ride? And she tried to ignore him. She tried to walk away. She repeatedly made it clear she was not interested. He went around the corner, parked, and then as she came by again, again repeated his attempts to try to get her in the van. So in that case, you're agreeing that that's crossed the line? Absolutely, Your Honor. In that case, there absolutely were facts shown except for motivation. Because she resisted that overture, and then he pursued it, much like this boy who tried to get out of his seat at his stop after he signaled to get off, yet he guided him, if you will, back into his seat. Is there any real distinction in that regard? I believe there is a distinction, Your Honor. In Velez, the girl ignored him the whole time and was trying to get away from him. He doggedly pursued her, as Your Honor has pointed out, and he said, hey, baby girl, to a 14-year-old child. In this case, Mr. Black had groceries, there's no dispute about that, and Nathan agreed to help. Nathan was 11, though, too, right? He's five years younger than the girl. He was 11 years old, Your Honor. It's significant here because Nathan did agree to help. So in Velez, the entire interaction between the defendant and the victim was unwanted. She wanted nothing to do with him. He kept pursuing. Here, Mr. Black and the boy had a pleasant conversation at the bus stop. He agreed to help him. And then on the bus, perhaps Nathan didn't realize that it was a different stop from Mr. Black's apartment or whatever. The child did agree, but first of all, it's a child. Secondly, he did agree to help him carry his bags. I don't know that the child was necessarily agreeing to walking down an alley, up the back steps to the third floor, inside the house, and then have the guy lock the door and try to keep him in there. I mean, agreeing to help somebody is one thing. I think you're placing a little too much emphasis on a child agreeing to help an older person out. Going along with your position, what if he had shown the kid the magazine? Would your position be different then? Had he shown the child the magazine, it would be a very different situation, Your Honor. Because in this case, the magazine has absolutely nothing to do with offense. There is no connection to this offense whatsoever. There is no evidence that the magazine was ever in the apartment, ever around the boy. There is no indication that Mr. Black ever said, let me show you a magazine. There is nothing like that. The magazine was on his person two hours later when he was arrested walking down the street. I'm sorry. It speaks to his state of mind, though, doesn't it? I believe it does not, Your Honor. It's two hours later. The magazine shows adults engaging in consensual sexual activity, which to me offers absolutely no indication of his state of mind involving an 11-year-old boy hours before this. Is it your position that the state has the burden to prove beyond a reasonable doubt that his conduct was sexually motivated? I believe it is the state's burden. I think it should be beyond a reasonable doubt as well. However, some of the recent case law suggests that it could be merely a factual finding, which would not necessarily require a reasonable doubt. It's not the state's burden to prove the underlying offense that we're talking about here. We're talking about registration after he's been convicted of a crime that qualifies him for registration. And there's a distinction there. Would you agree? I agree. There is a distinction there, Your Honor. The reason I think it's – So a quick two-part question. What do you believe the burden of proof is for the state? And then what is our standard of review in looking at what that trial judge did and weighing the evidence after the case was remanded back to him? Sure. As to the first part, Your Honor, I believe it should be beyond a reasonable doubt. And the reason is, although this is not an element of the offense, this finding transforms this into a sex offense. The conviction for unlawful restraint on its own is not a sex offense. With this judge's finding that says it's sexually motivated, it now becomes a sex offense. And that's important because, again, while it's not an element, it's a very important finding. It transforms this into a sex offense. It used to be self-executing. It used to be a sex offense, and that was sort of illogical, and it was removed. And then it required the judge to make a finding unless the evidence was in there in the underlying case. That's correct, Your Honor. The creation of VOIRA made it clear that some are sexually motivated and some are not, and that's the important distinction. So this judge's finding transforms this offense into a sex offense, which is the reason we think it should be beyond a reasonable doubt. The standard of review for that would be what? Abuse of discretion. Are you saying that we should review his finding for an abuse of discretion, manifest weight of the evidence? What's the standard of review that you think we should apply here? I believe it should be abuse of discretion because, as this Court previously found in this case,  which implies that it's within the judge's discretion as to this finding, so his finding would then be subject to an abuse of discretion standard. Can you point to any other instance where the burden of proof is beyond a reasonable doubt when we're not talking about the corpus delicti? In sexual violent person petitions and sexually dangerous person petitions, both of which are considered civil. However, they are much like criminal trials. In both of those, the State has to prove the person's dangerousness and all of those things beyond a reasonable doubt. The liberty issue. There's a liberty at stake here. In this instance, we're talking about mere registration, right? Your Honor, I would posit that this is also a liberty interest. Being deemed a sex offender is obviously very damaging to a person's reputation. It affects their ability to get housing, employment. They can't go to certain parks. They can't go to certain places. And that's absolutely a restriction on their liberty. And it's not merely a registration in this situation. Our position is this was not a sex offense. So calling Mr. Black a sex offender and subjecting him to all of those registrations is absolutely a restriction on his liberty. You're distinguishing T.C. I'm sorry? You're distinguishing T.C. I am, Your Honor. I believe this is different from... You've taken it to another step. Yes. I believe this is different from T.C. Because in this case, as I said previously, Mr. Black's conviction is not the only... In all of the prior cases, the conviction was the reason the person had to register on the sex offender registry. The conviction alone led to their registration. Here, it is this judge's finding that leads to the registration in addition to the offense. So his conviction does not by itself require him to register on... So you're drawing the line there. It's a distinction between a finding versus a conviction on the case itself. Yes, Your Honor. That's absolutely one of the differences. I mean, I'm not saying you're right or wrong. I'm just simply saying there is a distinction between the prior cases. Yes, and I think that's an important distinction, Your Honors. It's... The prior cases deciding that the sex offender registry is not a protected liberty interest dealt with different factual situations. In those cases, as I said, because it was the conviction, the information came out at the trial. The defendant had a chance to dispute those things. Here, as I said, no one ever argued this was sexually motivated at trial. Mr. Black had no idea he was going to be subjected to sex offender registry. But they're not required to. If the charge that's going to go to the judge or to the jury is for unlawful restraint, the state is not required under the version of the statute that he was tried under to indicate that there was a sexual motivation for it, are they? That's correct, Your Honor. Unlawful restraint does not require the state to prove motive. So should the state be unnoticed and have to provide that during the trial so that the defendant is clearly aware that this separate and distinct hearing is going to come? I mean, he has no knowledge in this case that he's going to, as you indicated, that this is going to happen. Yes. The state was not required to prove motive. However, as I stated, they did charge Mr. Black with aggravated kidnapping, which required them to prove intent to secretly confine. You won that case. I agree, Your Honor. I'm just saying, the state did argue, they did try to argue intent at trial. They argued that the magazine was relevant to show his intent in taking the boy back, and Judge Sachs said the magazine was not relevant, apparently not probative enough of his intent. So I'm saying that while the state was not required to, they certainly had an opportunity to put forth this evidence at the trial. They simply chose not to, Your Honor. They were barred from, right? They were barred from introducing this pornographic magazine. They were barred because it's irrelevant, Your Honor. It was irrelevant. Irrelevant for purposes of establishing the elements of the offense, but not irrelevant for purposes of establishing whether this was a sexually motivated action. In Judge Sachs's eyes, that's correct. Our position is that the magazine is irrelevant to establishing sexual motivation. As I said previously, there is no connection between the magazine and the boy or the apartment whatsoever. And, again, it's a legal magazine showing consenting adults. Well, it's proximity. It's a question of weight as opposed to relevance, right? Okay. Well, then our position – And we had it within two hours of this offense.  motivation as opposed to it's not relevant at all and shouldn't be considered for any purpose. Sure. If that's the case, Your Honor, our position is that this magazine has no weight. It simply does not show sexual motivation in this case. It doesn't – you think that the trial court was – the trial court abused its discretion in finding that the possession of this pornographic magazine a couple hours after this child ran from his apartment was – he felt that it was consistent with having a preoccupation of some sexual nature. You would disagree with that? You think that would be an abuse of discretion? I do believe that's an abuse of discretion. That's entirely speculative, Your Honor. There's no fact indicating that sexual motivation had anything to do with this offense. The magazine simply showed that two hours later, when the boy was long gone, Mr. Brock was walking down the street and had picked up a legal pornographic magazine. Well, picked up or was getting rid of. I don't think anybody – Yes. It's unclear where the magazine came from. Right. The point is, there's no evidence that it had anything to do with the apartment or the boy, and it would be entirely speculative to say that that magazine is somehow probative of his mental state. While we reach up on the magazine, let's go to the background that was admitted. Sure. For the hearing, not necessarily for the trial. Sure. Your Honor, Judge Sachs also relied on Mr. Brock's victimization as a youth, both sexually and physically at the hands of his father, and his history of misdemeanor solicitation and prosecution offenses. However, again, both of these are irrelevant. They're not facts of the underlying offense, and they simply do not show sexual motivation. His victimization as a youth was decades prior to this offense, and there's, again, absolutely no connection between those instances and this current offense. The state presented no evidence showing any kind of connection between victims of childhood sexual and physical abuse then committing sexually motivated crimes later. If that logic were to stand, everyone who's ever been sexually abused in their life would then be sexually motivated to commit crimes in the future, and that's simply not true. And as to his history of solicitation and prosecution offenses, only one was a conviction. It was a misdemeanor conviction for which he served two days. The rest were bare arrests. So these bare arrests were not even presented properly. There was no testimony of the incidents or the circumstances under which they happened. They were many, many years prior to this offense. Again, they offer no indication of his state of mind at the time of this offense. The only relevance of these arrests is that they show that at those times, the police believed that Mr. Black had exchanged money for consensual sex with an adult. There's absolutely nothing in his history showing nonconsensual sex or sex with children, and our position is that adult consensual sex is wholly different than sex with a child. And there's absolutely no indication in this case that Mr. Black has any profilities to sex with children. And importantly, Your Honors, at the hearing on the motion to reconsider, Judge Sacks, he said, I am not sure what the statute is to refer to it, the differentiation between the sexual offender, sexual motivation, and nonsexual motivation. So Judge Sacks specifically said he was not aware of the definition, the precise definition that he was supposed to be making in this decision, which shows that he was speculating and his decision was arbitrarily made on his perception of the facts. And we believe that's contrary to what the legislature intended when they said facts of the underlying offense. Okay, why don't you wrap up? If there's no additional questions, Your Honor, because there is no evidence that this offense was sexually motivated, we ask that Mr. Black be removed from SORA and allowed to register on VOERA. Thank you. Thank you, Mr. Mott. May it please the Court. The trial court properly filed that defendant's unlawful restraint of NN was sexually motivated and that defendant should register pursuant to SORA. Since we are talking about facts underlying defense, I'm going to go through a little bit of the facts. Defendant was 34 years old. NN was 11 years old. And they originally met at a bus stop. NN accompanied the defendant on the bus to help him with his groceries. When the child goes to get off the bus, he goes to pull the cord. Defendant pulls his arm. The child sits back down. They get off the bus at the defendant's bus stop. The child helps defendant with the groceries and accompanies defendant into his apartment. Defendant asks the child to bring the groceries inside, which the child does. The child then hears the door lock, turns around, tells the defendant he has to leave. The defendant stands in front of the door, back to the door, hand on the doorknob. The child has to push his way out. And as the child is exiting, defendant grabs his arm again. The child is able to escape. He runs home. An investigation ensues. Two hours later, during the investigation, the child is in the police car. He sees the defendant on the street and identifies him. The defendant is arrested. And during the process of arrest for this offense, the pornographic magazine is recovered. Okay, so now I'm going right to the question that I had asked him, that being a finding versus a conviction. In other words, when this guy was convicted, you could take that crime as not being a sexual offense, or you could take it as being a sexual offense. So he's technically not on notice until you go for the finding before the judge. So I'm saying, where do you draw the line between these, so that a defendant has a valid opportunity to know what he's being, if it's not clearly defined as a sex offense, how does he get a fair hearing on the finding issue? Well, once a person is charged with unlawful restraint, they are going to have to register under SORA or VOERA. And so it's the people's position that they are on notice of that. This case is in a little bit of a different posture because it occurred in 2006 pre-amendment. Actually, the case was tried after the amendments. So at that time, the court would not necessarily have known about making the finding. But when this case went back in Black 1, at that point, the court now is well aware that they have to make a finding that a crime is sexually motivated or is not sexually motivated. And the judge has to make a finding one way or the other. So the court would have to find that the offense was not sexually motivated if they didn't find this offense was sexually motivated. So you're really saying this was a unique situation that wouldn't happen normally? Right, correct. An offense is sexually motivated where one or more facts of the underlying offense indicate conduct that is of a sexual nature or shows intent to engage in behavior of a sexual nature. Notice this does not prove, it doesn't say it can't indicate anything else. And the recent decisions of Cardona and Velez are instructive here. They say this is a very low threshold that courts have to look at or have to meet. What is your position then on the burden of proof on this issue of sexual motivation indicating conduct of a sexual nature? Our position is that this is a collateral consequence of the offense. There is no requirement that it be proved beyond a reasonable doubt. The only requirement is that there be one or more facts that indicate conduct of a sexual nature. And here the trial court properly found that you had one or more facts that indicate intent to engage in behavior of a sexual nature. The defendant's actions of luring, tricking, and secreting the child, locking the door, locking the doorway, failing to let him leave when he wanted to are all facts of an underlying offense that indicate sexual motivation. As courts have recognized in Illinois in cases like Fuller and Cardona, people who kidnap, unlawfully restrain, or abduct children pose a greater risk of committing sexual offenses against them. There's a pattern in many of these cases, which is why the state cites Lamke and Banks and Skiles, not to say that those cases made a finding of sexual motivation, but to say that these children are at risk and there is a pattern. There is an offer of money or candy, a job, and then they're secreted in an abandoned building, a van, their house. It's sexual predatory behavior. And these facts alone indicate conduct of a sexual nature, whether you consider the magazine or not. It's people's position that these facts alone support the trial court's finding. The recent decisions- How could you say necessarily that's the conclusion? Wouldn't it just be just as reasonable to say this was a kidnapping in the making for ransom? I don't think so, because, well, first of all, these facts only have to indicate sexual behavior. It doesn't say that they can't ever possibly indicate anything else. And I think that their facts here tell a story. They lay out a pattern of what is going on. It's the luring, the tricking, the befriending the child, talking to him about basketball, all to get him into his house to lock the door. And there's, you know, the defendant made a lot about the groceries. Well, he did have groceries. Well, the child did agree. It doesn't matter. Those groceries were a pretext. How do we know the groceries were a pretext? Because when the child gets to the door, the defendant doesn't say, thanks for your help. Yeah, but change the facts. Let's say the defendant is driving by and he scoops the kid off the street, jumps on his scooter. Does that change anything? Well, it would depend, you know, on the entire factual scenario. I would say that he scoops him into his car, drives to his place, he brings him in, and he locks the door. I would say pursuant to Fuller, no, that wouldn't change. It would not change, because children are at risk of sexual harm from people who kidnap, abduct, and restrain them. And these types of facts indicate sexual predatory behavior. And remember, SORA is a regulation to protect children from future harm. This is not a punishment. The goal of SORA is to protect children. So the operative issue, the operative fact is the age, the disparity in the age and the youth. Children are vulnerable. Correct. So then is that the next logical conclusion, that every time we're dealing with the unlawful restraint of a child under 12, if you will, then that's got to be sexually motivated? Not necessarily. And the court discusses this in Cardona. There are situations that show a different motive. We have in Cardona, the court discusses Johnson, where there's a kidnapping of a child for ransom, and in Ray Phillips C., where there was a gang-related kidnapping. I believe he took the victim's wallet, so there's, you know, obviously kidnappings or abductions or restraints for, you know, steal. That's not the case here. That is not the picture that's painted here. In Velez, this court said the Registration Act does not require that there be a sexual conduct or an overt sexual act. And essentially, that is what the defendant wants this court to say, is that there either needs to be sexual contact, an overt sexual act, or some kind of statement. That's how they're distinguishing the Velez case, because the hey, baby girl. That's been rejected, and that was rejected in Cardona. And the court, in that case, the child was grabbed by a schizophrenic man. And at the time she was grabbed, she reported that he said something sexual. At the time of his discharge hearing, she said he made a statement to her that she must go with him, and she couldn't remember whether he said anything sexual. And the court said, even setting aside the debate of whether the defendant uttered the word sex, the evidence more than indicates the defendant wanted this child for his own purposes, and it would be difficult for the trial court to state the opposite, which is what the trial court would have to do. They would have to make a finding that the crime was not sexually motivated. You cannot do that here. The people's position also is that the standard of review is the same as in Cardona, a manifest way to the evidence, finding against the manifest way to the evidence, only if the opposite conclusion is clearly evident. Certainly not the case here. The trial court properly found that the facts of this crime indicate sexual motivation. With regards to the statements in the PSI and in regards to the defendant's prior history, the statements in the PSI, it's important to remember, are statements that the defendant reported in his PSI interview for sentencing in this offense. He's been interviewed for this offense, for sentencing in this offense, and obviously giving statements which presumably will be helpful to him. And those statements, the court should not be asked to turn a blind eye to statements that the defendant has made in preparation for sentencing. However, in this case, it doesn't really matter. You don't need those statements. The facts in and of themselves are sufficient to uphold the trial court's findings. With regard to the due process argument, this decision was in Valese, basically rejected the same argument. This court found that there is no deprivation of a liberty interest and that the defendant received all the process that he was due. The defendant did have an opportunity at the hearing on sexual motivation to be heard, and for that reason the people rely on this court's decision in Valese and in the arguments in our brief. For these reasons and all the reasons stated in our brief, we respectfully request that you affirm the trial court's finding. Thank you. Mr. Mott, let me direct you to one of the last comments that your colleague made, and that is that in this circumstance, the court, to reach a different conclusion, would have to have reached the conclusion that this crime was not sexually motivated. Do you agree with that? I do not agree with that, Your Honor. Okay, why not? Because this court in the prior decision, in Black 1, made it clear that if a judge does not make a finding, the default is to put them on BOERA, which means that the state has to show that it was sexually motivated. A judge has to find that it was sexually motivated for them to go on SOERA. If they do not, they go on BOERA, which means if the judge believes it was sexually motivated, they go on SOERA. If it's any other motivation, if we don't know, if we can't figure out what the motivation is, it must be BOERA. You can only put them on SOERA if the judge knows it's sexual. Was there any other motivation revealed by any of the evidence in this case other than put sex aside for the moment? Did anything that the defendant said or did, or that the child said or did, indicate something other than sex being this man's motivation for secreting this child? We have no idea what the motivation was. There's no indication one way or another of sexual, non-sexual, whatever it was. All we know is that Mr. Black asked for help with the groceries. The boy agreed to help with the groceries. When they got to his apartment, he asked him to put the groceries in the kitchen, which is a perfectly reasonable place to put the groceries. And then he locks the door. Is he locking the door so that the child will put the groceries away? Your Honor, it's not clear why he locked the door. But at trial, the defense attorney argued that it's habit for most people to, when you come in, you turn, you shut the door, and you lock it. And he was standing in front of the door. He did not ask the boy to go into his bedroom. He didn't keep the boy in the apartment. He locked the door for mere seconds, and then when the boy shoved him aside, he let him go. He did not grab him. He did not say anything. I think it's safe to say that the evidence at least indicated that the defendant was doing whatever he could to try to secrete the child and secrete his purposes of what he wanted to do with the child. He didn't grab him. He didn't say anything to him. He didn't grab him, you know, in a sexual way. He didn't grab himself in a sexual way. But does that exclude that what was on his mind was to do something sexual with this child? We simply don't know what was on his mind, Your Honor. And that's the important distinction. The State mentioned that it's a low threshold, and it is a low threshold. However, the legislature said you need a fact to show sexual motivation, not speculation, not a feeling that something was odd here. It must be a fact that shows sexual motivation. So at the end of the day, that's really where you're hanging your hat, that the Court's finding was speculation because there wasn't specific evidence where the defendant said or did something of an overt sexual nature. Is that fair to say? That's correct. In this case, his finding was based on his speculation of what he believed Mr. Black's state of mind was. There is no evidence to support that. And for those reasons, Your Honor, we ask that this Court have Mr. Black removed from SORA and allow him to register on VOIRA. Thank you. Thank you very much. We'll take it under advisement and be back to you folks in a couple weeks or so, we hope. And we're going to take a short break.